### CONTINENTAL FIRE & CASUALTY INS. CORPORATION v. AMERICAN MFG. CO.

#### No. 15052.

Court of Civil Appeals of Texas.
Fort Worth.
June 3, 1949.

Rehearing Denied July 8, 1949.

See also 206 S.W.2d 669.

Harold M. Oster and Curtis White, both of Dallas, for appellant.

Thompson, Walker, Smith & Shannon, and Ogden K. Shannon, all of Fort Worth, for appellee.

HALL, Justice.

Appellee American Manufacturing Company of Texas recovered judgment in a district court of Tarrant County, Texas against appellant Continental Fire & Casualty Insurance Corporation, which appellee alleged was due it on an oral contract of indemnity claimed to have been entered on or about February 1, 1945, between its company and that of appellant, wherein appellant, through its employee, induced appellee, through its employee, to cancel a policy for workmen's compensation which it then carried with the Pacific Employers Insurance Company (not a party to this suit), and to purchase a policy with appellant instead, by promising to reimburse appellee for any money it paid out to Pacific for short rate premiums.

Appellant in its answer denied it made such oral agreement and plead further, if it be found said oral agreement was made, same was illegal under Texas statutes and not enforceable.

Trial was to the court, which rendered judgment for appellee and against appellant for the amount of $14,905.89, with interest and costs.

Appellant perfected this appeal by submitting two points of error as follows:

"1. The oral agreement of indemnity, if made, was illegal and the trial court erred in giving effect to it in its judgment.

"2. The oral testimony pertaining to the oral agreement of indemnity was inadmissible and the trial court erred in overruling appellant's motion to disregard such testimony for the reason that it was in conflict with and was an effort to vary by parol the provisions of the compensation policy which appellant issued to appellee."

A portion of the testimony in the case is substantially as follows: In January, 1945, appellee was carrying workmen's compensation with Pacific Employers Insurance Company covering the period June 1, 1944 to June 1, 1945; appellant acting by and through its Vice President and duly authorized agent, L. B. Holaday, solicited appellee's compensation insurance account, and in order to secure such account it induced appellee to cancel its policy with Pacific Employers Insurance Company on February 1, 1945, by promising and agreeing with appellee, acting by and through its President, W. J. Gourley, in Fort Worth, Tarrant County, Texas, that appellant would protect appellee against liability and loss for any short rate premium that Pacific Employers Insurance Company might charge appellee as a result of such cancellation; that pursuant to such promise and agreement and because thereof and acting thereon, appellee canceled its policy with said Pacific Company on said date and transferred its compensation insurance business to appellant. That thereafter Pacific Employers Insurance Company demanded of appellee the pay-

ment of the short rate premium and upon such demand appellee did pay said sum of $14,978.62, which is the basis for this controversy.

The parties stipulated, among other things, that the insurance policy which appellant issued to appellee had the following endorsement thereon: "This endorsement, together with the policy to which it is attached, is the form prescribed by the Board of Insurance Commissioners in accordance with the authority imposed in the Board of Insurance Commissioners by law. Any contract or agreement not written into this form shall be void and have no effect; * * *" and further stipulating, "that said standard policy did not contain any promise or agreement by L. B. Holaday, acting for and on behalf of Continental Fire and Casualty Insurance Corporation, and made with W. J. Gourley to protect American Manufacturing Company of Texas against liability and loss for any short rate premium that Pacific Employers Insurance Company might charge American Manufacturing Company of Texas as a result of the cancellation of the Pacific Employers Insurance Company policy; * * *"

All statutory citations are from Vernon's Ann.Civ.St.

Appellant's argument is that such oral agreement of indemnity was illegal under the express terms of Article 4913, which reads as follows: "The Commission shall prescribe a uniform policy for workmen's compensation insurance and no company or association shall thereafter use any other form in writing workmen's compensation insurance in this State, provided that any company or association may use any form of endorsement appropriate to its plan of operation, if such endorsement shall be first submitted to and approved by the Commission, and any contract or agreement not written into the application and policy shall be void and of no effect and in violation of the provisions of this chapter, and shall be sufficient cause for revocation of license to write workmen's compensation insurance within this State."

In defending its position, appellant contends that by the payment of said sum of $14,978.62 to appellee it would be the same as if appellant had agreed in the beginning to take said sum less than the law required it to take and appellee to pay. In other words, appellee would be required to pay less than the amount of premium required by law.

Appellee argues in support of its judgment that neither the oral agreement of indemnity nor the testimony relating thereto violates Article 4913, or the parol evidence rule, and that the oral agreement of indemnity does not constitute a rebate prohibited by law; that its suit against appellant is not based upon any provision of the policy and further Article 4913 does not invalidate or render inadmissible evidence relating to independent collateral agreements between the parties, whether oral or written, entered into prior to the execution of the compensation policy where those agreements do not cover the subject matter or any part of the subject matter covered by the policy and where they do not tend to vary, contradict or add to the substantive provisions of the policy. Appellee further contends that this is not a case where less than a regular prescribed rate has been paid in the first instance, or the prescribed rate has been paid with the understanding that a part of it would be rebated, but it is a case where appellee has paid the full premium required by law; that the suit is based on an indemnity agreement inducing its subscription to appellant but that such contract has no legal relation to the premium to be paid and the mere fact that appellant is forced to fulfill its contract, thereby causing it to keep less money in its treasury, is of no legal significance; that such result might as well have followed from the successful prosecution of any cause of action which said Company might have been forced to defend, etc.; that appellant's obligation under such oral contract was a contingent one—contingent upon appellee's liability to Pacific.

In short, appellee's position is that it not only paid out the regular premium to appellant as required by law but unless it is permitted to recover from appellant its judgment for the amount which it has paid Pacific under such oral agreement, it would lose the said sum of $14,978.62, but

that if allowed to collect said judgment and sum it will not receive one penny of premium money paid to appellant. That appellant has cited no law prohibiting it from securing business under such circumstances.

■ Our law recognizes the right of parties to contract with relation to their property as they see fit, provided such contract does not contravene public policy and their contracts are not otherwise illegal. It is also recognized to be the law that our courts will not strike down valid contracts unless there is a legal reason for doing so. 10 Tex.Jur. p. 16, sec. 5.

■ It is equally true that illegal contracts are void and the courts will not recognize rights springing therefrom. It is also the law that contracts prohibited by statute, either expressly or impliedly, are void without regard to the question of moral turpitude and contracts directly and expressly prohibited by a constitutional statute in unmistakable language are absolutely void. Hennessy v. Automobile Owners' Insurance Association, Tex.Com.App., 282 S.W. 791, 46 A.L.R. 521.

■ An illegal contract cannot be ratified by either party. As a rule the parties to such illegal contract cannot render it enforceable. 10 Tex.Jur. p. 260, sec. 149. Ibid., p. 232, sec. 135.

"As a general rule a court will not aid in the enforcement of an illegal contract at the instance of any of the parties thereto where they are in pari delicto, but will leave the parties to the agreement where it finds them * * *" 10 Tex.Jur. p. 234.

The question for this court to decide is whether an insurance company can, under our laws, obligate itself to pay the pecuniary obligations of another person as an inducement for such other person to purchase a policy of insurance from said company at the rate of premiums fixed by the Commissioner of Insurance.

■ We find that such contract is illegal and unenforceable. The agreement between the parties above enumerated is to the effect that if appellee will secure its compensation insurance from appellant, appellant will in return pay the short rate premium which appellee owes the third company for cancellation of insurance in said third company in order to be in a position to purchase the insurance from appellant.

The testimony reveals other extenuating circumstances which are not argued by the parties but which may aid in placing the parties in pari delicto, that is, to wit: Appellee's president agreed and did buy $20,000 worth of stock in appellant's company at the same time this transaction in question took place; the testimony further shows that the daughter of appellee's president was appellant's agent, which collected the premiums from appellee.

We further find such contract in violation of that portion of Article 4913, which reads as follows: "The Commission shall prescribe a uniform policy for workmen's compensation insurance * * * and any contract or agreement not written into the application and policy shall be void and of no effect and in violation of the provisions of this chapter."

Article 4907 provides in substance that the Board of Insurance Commissioners "shall make, establish and promulgate all classifications of hazards and rates of premiums * * * applicable to * * * the Workmen's Compensation Law."

Article 4908 reads as follows: "The Commission shall prescribe standard policy forms to be used by all companies or associations writing workmen's compensation insurance in this State. No company or association authorized to write workmen's compensation insurance in this State shall, except as hereinafter provided for, use any classifications of hazards, rates of premium, or policy forms other than those made, established and promulgated and prescribed by the Commission."

Article 4911 provides the following: "The Commission shall determine hazards by classes and fix such rates of premium applicable to the payroll in each of such classes as shall be adequate to the risks to which they apply and consistent with the maintenance of solvency and the creation of adequate reserves and a reasonable surplus, and for such purpose may adopt a system of schedule and experience rating

in such manner as to take account of the peculiar hazard of each individual risk, provided such rate shall be fair and reasonable and not confiscatory as to any class of insurance carriers authorized by law to write workmen's compensation insurance in this State. To insure the adequacy and reasonableness of rates, the Commission shall take into consideration an experience gathered from a territory sufficiently broad to include the varying conditions of the industries in which the classifications are involved, and over a period sufficiently long to insure that the rates determined therefrom shall be just, reasonable, and adequate rates. The Commission shall exchange information and experience data with the rate-making bodies of other States and shall consult any national organization or association now or hereafter existing for the purpose of assembling data for the making of compensation insurance rate."

Most of the cases pertaining to discrimination and rebate come from life insurance policies which are prohibited by another statute, to wit, Article 5053.

Some of the cases we have heretofore referred to were discussed in our opinion in 206 S.W.2d 669 while this case was before us on the matter of venue, to which reference is hereby made.

In a life insurance case this court held in the case of Morris v. Fort Worth Life Insurance Company, Tex.Civ.App., 200 S. W. 1114, 1115, that it was unlawful for a person to enter into a contract with an insurance company to the effect that if said person would purchase a policy of insurance in a certain company the latter would make the assured a loan by which he could save in interest $200 or more for each year during the time the loan existed. The court, among other things, stated the following: "According to his contention it lies at the very base of the agreement, and upon it alone rests the agreement to make the insurance contract; and had no such promise of the loan been made, he would not have taken out the policy of insurance in the appellee company."

Appellee's President in the instant case testified that he would not have canceled his policy with the third company and

taken out insurance with appellant unless appellant agreed to reimburse appellee for the short rate premium it owed said third company. He futher testified he knew that his company would probably have to pay said short rate premium because such provision was written into the policy but he relied upon appellant's reimbursing him for same under the contract in question here.

Article 4911, supra, in part is designed for the purpose of keeping insurance companies solvent. If the contract under discussion here is legal it would vitiate all statutes pertaining to control and supervision of insurance companies relative to rates, premiums, discrimination between companies and adequate reserves to be maintained by companies for the benefit of the public at large. Battles v. Braniff Airways, 5 Cir., 146 F.2d 336; Brown & Root v. Traders & General Ins. Co., Tex. Civ.App., 135 S.W.2d 534; English Freight Co. v. Knox, Tex.Civ.App., 180 S.W.2d 633; Glenn H. McCarthy, Inc. v. Knox, Tex.Civ.App., 186 S.W.2d 832.

Judgment of the trial court is reversed and judgment herein rendered for appellant.