**R.L. PEVETO et al., Petitioners,**

v.

**Ernest STARKEY, Jr., et al.,
Respondents.**

No. C–947.

Supreme Court of Texas.

Nov. 24, 1982.

Rehearing Denied March 16, 1983.

Edwin P. Horner, Waco, Goodwin, Jarrel & Britain, Willis Jarrel, Tyler, Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Mike A. Hatchell, Tyler, for petitioners.

Wilson, Miller, Spivey, Sheehy, Knowles and Hardy, James W. Knowles and Murph Wilson, Tyler, for respondents.

SONDOCK, Justice.

This is a suit for a declaratory judgment. Starkey seeks to have a term royalty interest conveyed to Peveto declared void.[1] He also seeks to have a term royalty interest in the same property conveyed to him declared valid. The trial court rendered judgment for Starkey, and the court of appeals affirmed the trial court judgment. 624 S.W.2d 310. We reverse the judgments of the courts below.

A.G. Jones and his wife conveyed an undivided three-fourths term royalty interest[2] in several tracts of land to Peveto. The primary term of the royalty deed was "for a period of fifteen years" from April 23, 1960, and "as long thereafter as oil, gas or other minerals, or either of them is produced . . . in paying commercial quantities." Jones then executed an oil and gas lease to Edge and Moehlman. The lease contained a shut-in royalty clause, but the term royalty deed did not.

Thirteen years later, Peveto executed an instrument entitled "Ratification of Oil, Gas and Mineral Lease," which purported to ratify the lease executed by Jones to Edge and Moehlman. This was apparently a unilateral attempt by Peveto to acquire the benefits of the shut-in royalty clause in the Edge and Moehlman lease. Subsequently, Edge and Moehlman completed a test gas well, but due to the high sulphur content of the gas produced, the well was shut-in. Edge and Moehlman made shut-in royalty payments to Jones and Peveto for the duration of the term royalty deed.

In November of 1973, Jones conveyed to Starkey, by top deed, a three-fourths term royalty interest. This royalty deed was for a primary term of ten years and "as long thereafter as oil, gas or other minerals, or either of them, is produced . . . in paying commercial quantities." The deed contained the following typed provision:

This grant shall become effective only on the expiration of the above described Royalty Deed to R.L. Peveyto [sic] dated April 23, 1960.

Four months before Peveto's deed was to expire, Jones and Peveto executed another instrument. This instrument purported to extend the primary term of Peveto's deed from fifteen years to twenty-five years.

■ Peveto first contends his term royalty deed was extended into its secondary term by the payment of shut-in royalties by Edge and Moehlman. We disagree. The payment of shut-in royalties does not constitute "production in paying commercial quantities." *Archer County v. Webb,* 161 Tex. 210, 338 S.W.2d 435 (1960). "It is now well established that the completion of a gas well capable of producing in paying quantities but shut-in due to lack of pipe line facilities or for other reasons is not considered production, or production in paying quantities, under the provisions of a term royalty deed which contains no shut-in gas well clause." *Midwest Oil Corp. v. Lude,* 376 S.W.2d 18, 20 (Tex.Civ.App.— Corpus Christi 1964, writ ref'd n.r.e.); *See also Archer County v. Webb,* 161 Tex. 210, 338 S.W.2d 435 (1960).

■ The shut-in clause contained in the lease did not modify the terms of the royalty deed. Because the royalty deed did not contain a shut-in royalty clause, it terminated at the expiration of the primary term. "It is the mineral deed, not the lease, which [must contain] the provision securing to the term mineral owners the benefits of the shut-in gas well provision." *Archer County v. Webb,* 161 Tex. 210, 338 S.W.2d 435, 437.

■ Peveto further contends his "ratification" of the Edge-Moehlman lease enabled him to rely on the shut-in royalty clause in that lease and extended his deed past the primary term. We do not agree. The payment of shut-in royalties to those

---

1. There are several petitioners and respondents but all petitioners stand in the shoes of R.L. Peveto and all respondents stand in the shoes of Ernest Starkey. All petitioners are referred to as "Peveto" and all respondents as "Starkey."

2. The three-fourths term royalty interest was conveyed by two identical deeds. One was for an undivided one-fourth and the other for an undivided one-half interest. Reference to "the deed" includes both instruments.

claiming under a royalty deed which contains no shut-in payment clause will not extend the interest beyond the primary term. This is so even if the royalty owners have executed an instrument ratifying the lease on the property. *Midwest Oil Corp. v. Mengers,* 372 S.W.2d 247 (Tex.Civ.App.— Waco 1963, writ ref'd).

■ Peveto next argues the royalty deed to Starkey violates the Rule against Perpetuities. Article I, section 26 of the Texas Constitution expressly provides: "Perpetuities ... are contrary to the genius of a free government and shall never be allowed ...." Tex.Const. Art. I, § 26. The Rule states that no interest is valid unless it must vest, if at all, within twenty-one years after the death of some life or lives in being at the time of the conveyance. *Foshee v. Republic Nat'l Bank of Dallas,* 617 S.W.2d 675, 677 (Tex.1981). The Rule requires that a challenged conveyance be viewed as of the date the instrument is executed, and it is void if by any possible contingency the grant or devise could violate the Rule. *Brooker v. Brooker,* 130 Tex. 27, 106 S.W.2d 247, 254 (1937).

The deed from Jones conveying the term royalty interest to Starkey was a standard form nonparticipating royalty deed. The printed portion of the granting clause conveyed a presently vested three-fourths royalty interest. However, following the property description, the parties inserted: "this grant shall become effective only upon the expiration of [Peveto's] ... Deed ...." This additional clause causes the Jones-Starkey deed to violate the Rule.

The interest Jones conveyed to Peveto by the first term royalty deed was a determinable fee. This Court defined a determinable fee to be "an interest which may continue forever, but the estate is liable to be determined, without the aid of a conveyance, by some act or event circumscribing its continuance or extent." *Stephens County v. Mid-Kansas Oil & Gas Co.,* 113 Tex. 160, 254 S.W. 290, 295 (1923).

■ All parties agree the deed from Jones to Starkey is unambiguous. Thus, the intent of the parties must be determined from the four corners of the instru-

ment. *Rutherford v. Randal,* 593 S.W.2d 949, 953 (Tex.1980). The rights of the parties are governed by the language used and the choice of designating words is of controlling importance. *Morriss v. First National Bank of Mission,* 249 S.W.2d 269, 275 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.). The words used here postpone the vesting of Starkey's interest until some uncertain future date. A grant "effective only upon" the termination of a determinable fee cannot vest until the prior interest has terminated. A determinable fee could continue forever, and may not terminate within the time period prescribed by the Rule. The words "effective only upon" created a springing executory interest in Starkey which may not vest within the period of the Rule; therefore, the deed is void.

Because the restrictive language used in the Jones-Starkey deed prevented the grant of the interest from Jones to Starkey from vesting in interest until after Peveto's interest terminated, and since this might not occur within the period prescribed by the Rule, we hold that the instrument violates the Rule against Perpetuities.

Accordingly, we reverse the judgment of the courts below. Judgment is here rendered that the deed from Jones to Starkey is void.