Henry R. HAMMAN, et al., Appellants,

v.

BRIGHT & COMPANY, et al., Appellees.

No. 07–93–0245–CV.

Court of Appeals of Texas,
Amarillo.

Feb. 29, 1996.

Opinion Overruling Motions for
Rehearing May 15, 1996.

Kolodey & Thomas, Tom Thomas, Dallas, Carr, Fouts, Hunt, Craig, Terrill, & Wolfe, L.L.P., Donald M. Hunt, Gary M. Bellair, Terry L. Grantham, Lubbock, Crain, Caton & James, Jerald D. Mize, Houston, for Appellants.

Gibson, Ochsner & Adkins, S. Tom Morris, Wayne Sturdivant, Amarillo, Payne & Vendig, Robert Payne, Frank Honea, Dallas, Haynes and Boone, L.L.P., George W. Bramblett, Nina Cortell, Kathy Beasley, Dallas, Vinson & Elkins, L.L.P., James W. McCartney, Richard H. Page, Houston, Fulbright & Jaworski, L.L.P., Hugh E. Hackney, Tim M. Wheat, Dallas, Fred M. Lange, Houston, W. Wendell Hall, San Antonio, Ramey & Flock, P.C., Mike A. Hatchell, Tyler, Baylor University School of Law, Prof. Edwin P. Horner, Waco, Crenshaw, Dupree & Milam, Cecil C. Kuhne, Lubbock, for Appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

This is an appeal from a summary judgment. Appellants, the Hammans,[1] request

---

1. Appellants, collectively referred to as the Hammans, include Henry R. Hamman, individually, as executor and sole trustee under the will of Lenoir B. Hamman, as sole trustee under the will of John Hamman, Jr., as trustee for the Lenoir B. Hamman Annuity Trust and as trustee under the will of Francis Hamman; the George and Mary Josephine Hamman Foundation; Laura Francis Hamman, individually and as beneficiary and successor in interest to any trust created for her

that we reverse the trial court's determination that certain oil and gas top leases violate the Texas constitutional rule against perpetuities (the Rule). By cross-points, Bright,[2] Shell Western E & P, Inc. (Shell) and Atlantic Oil Corporation (Atlantic), the appellees/cross-appellants, request that we reverse the trial court's determination that the perpetual non-participating free royalty interest (NPRI) reserved in a certain deed, was not subject to the Rule. We decline in each instance, and affirm.

### Issues

This appeal presents two similar issues for our resolution. First, we are requested to determine whether, in certain top leases executed by the Hammans to John Hamman, Jr., the Hammans as lessors made present conveyances of their possibilities of reverter, which existed by virtue of outstanding bottom leases, or made conveyances of executory interests, which violated the Rule. Relying on *Peveto v. Starkey*, 645 S.W.2d 770 (Tex.1982), we conclude the top leases executed by the Hammans were future conveyances of springing executory interests which violated the Rule, and as such, were void *ab initio*.

We are further requested to determine whether the non-participating royalty interest reserved by the Hammans in a deed to Rio Grande Realty was a present reservation from a portion of the Hammans' possibility of reverter, which existed by virtue of outstanding oil and gas leases on the properties, or whether the interest was an executory interest which violated the Rule. Relying on *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466 (Tex.1991), and cases cited therein, we conclude the non-participating royalty interest was a valid reservation by the Hammans from a portion of their possibility of reverter

on the outstanding oil and gas leases and that as such, the interest did not violate the Rule.

### Background

The record shows in 1917, George and John Hamman acquired the Hamman ranch located in Hidalgo County. In April of 1951, the Hammans leased 20,715.83 acres to Shell Oil Company (the Shell lease). Shell later released a portion of this land, and on November 4, 1952, the Hammans leased 1,853.48 acres to Superior Oil Company (the Superior lease). The leases to Shell and Superior became "bottom leases" nine days later, when the Hammans executed two top leases[3] and a third lease in favor of John Hamman, Jr. The top leases corresponded to the property descriptions in the bottom leases, and the third lease (the other lease) covered all acreage not subject to the bottom leases. Except for the property descriptions and references to the underlying bottom leases, the two top leases are identical.

On December 27, 1952, George and John executed a deed to Rio Grande (the Deed) conveying certain mineral interests in the property under lease. The Deed provided that such conveyance was subject to the bottom leases, the top leases, the other lease, a reservation of one-half of the royalties accruing under the existing leases, and a perpetual one-sixteenth royalty interest in the grantors. After several transactions spanning approximately ten years, Atlantic succeeded to the mineral interest originally conveyed by the Deed.

In December 1987, the Hammans sued Bright, a sublessee/assignee under the top leases, to recover on the top leases for underpaid royalties, excessive fees, fraud, and conversion. They later sued Bright for wrongful

---

benefit; and Elizabeth Reed Hamman, individually and as beneficiary and successor in interest to any trust created for her benefit, and Henry R. Hamman, trustee for W.G. Hamman.

**2.** Appellees (cross-appellants), collectively referred to as Bright, include Bright & Company; HGG, Inc.; Kidco, Ltd.; Bright Universal Minerals Company; RFB Company; H.R. Bright, individually and as trustee of the trusts created under the will of Mary Frances Smith Bright; Clay

Van Ness Bright, individually; James B. Francis, Jr., individually; and James B. Reeder, individually.

**3.** A top lease is one granted by a landowner, during the existence of a recorded lease, which is to become effective if and when the existing lease expires or is terminated. Williams and Meyers, 8 Oil and Gas Law 1147 (Matthew Bender & Co., Inc. 1995).

pooling, and Atlantic was joined as a party. Bright denied liability and joined Shell as a third-party defendant. Atlantic responded by denying liability and further pleaded that the Rule voided both the top leases and the Deed *ab initio*. Bright, Shell and Atlantic then counterclaimed against the Hammans based upon the voidness of the instruments, and sought to recover previously paid royalties.

Bright, Shell and Atlantic moved for partial summary judgment on their counterclaims, and the Hammans responded with a cross-motion for partial summary judgment on the ground that the Rule did not affect either the top leases or the Deed. The trial court found that the top leases were void under the Rule, but that the conveyance in the Deed was valid. Bright then moved for, and received, a supplemental summary judgment that the Hammans had no standing to assert rights under the void top leases. The judgments were severed and consolidated, and the parties appeal.

### Applicable Principles

The summary judgment is based upon undisputed facts, and thus presents only questions of law. Therefore, we must determine whether the trial court correctly construed the provisions of the disputed instruments. *Hutchings v. Chevron U.S.A., Inc.*, 862 S.W.2d 752, 756 (Tex.App.—El Paso 1993, writ denied). Because the parties assert validity, or lack thereof, of the instruments based upon the rule against perpetuities, we will begin our inquiry by focusing on the Rule as it relates to the opposing interests allegedly created.

■ The Texas Constitution provides that "[p]erpetuities ... are contrary to the genius of free government, and shall never be allowed." TEX. CONST. art. I, § 26. Courts have enforced this provision by applying the rule against perpetuities. *Trustees of Casa View Assem. of God Ch. v. Williams*, 414 S.W.2d 697, 702 (Tex.Civ.App.—Austin 1967, no writ). Under the Rule, no interest is valid unless it must vest, if at all, within twenty-one years after the death of some life or lives in being at the time of the creation of the interest. *Peveto v. Starkey*, 645 S.W.2d at

772; *Foshee v. Republic Nat'l Bank of Dallas*, 617 S.W.2d 675, 677 (Tex.1981).

■ The Rule relates only to the vesting of estates or interests, not vesting of possession, and is not applicable to present interests, or future interests which vest at their creation. *Kelly v. Womack*, 153 Tex. 371, 268 S.W.2d 903 (1954). We must therefore, examine the challenged conveyances as of the date the instruments were executed, and the conveyances are void if, by any possible contingency, the interests could vest outside the perpetuities period. *Peveto v. Starkey*, 645 S.W.2d at 772; *Brooker v. Brooker*, 130 Tex. 27, 106 S.W.2d 247, 254 (1937).

■ Upon creation of an oil and gas lease, the grantee receives a fee simple determinable estate in the minerals, and the grantor is left with a possibility of reverter. *Jupiter Oil Co. v. Snow*, 819 S.W.2d at 468. This possibility of reverter is the right to the mineral estate upon termination of the lease, and is a freely assignable vested right. *Id.* In that regard, Texas courts have long recognized that the owner of a mineral estate can bargain, sell, convey, assign, retain, reserve, or except all or a portion of the possibility of reverter. *Id.; Murphy v. Dilworth*, 137 Tex. 32, 151 S.W.2d 1004 (1941); *Tipps v. Bodine*, 101 S.W.2d 1076 (Tex.Civ.App.—Texarkana 1936, writ ref'd.); *Gregg v. Caldwell–Guadalupe Pick–Up Stations*, 286 S.W. 1083 (Tex. Comm'n.App.1926, holding approved).

■ Moreover, being a presently vested interest, the possibility of reverter is not subject to the Rule. Consequently, a conveyance or reservation of a present interest in all or a portion of the possibility of reverter does not violate the Rule. *Bagby v. Bredthauer*, 627 S.W.2d 190, 197 (Tex.App.—Austin 1981, no writ). Alternatively, if the conveyance is of an executory interest which cannot vest until a condition precedent occurs, the interest is subject to, and indeed may be void under the Rule. *Peveto v. Starkey*, 645 S.W.2d at 772.

■ Since all parties assert the instruments are unambiguous, the court's primary duty is to ascertain the intent of the parties as expressed in the agreement. Under the

applicable rule of construction, we must confine our inquiry to the four corners of the instrument and cannot consider extrinsic evidence. *Luckel v. White,* 819 S.W.2d 459, 461 (Tex.1991); *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 728 (Tex.1981).

When we apply the four corners rule to these instruments, and confine our inquiry to the intent expressed by the language employed therein, we conclude that although the parties urge similar "rule against perpetuities" arguments with respect to both transactions, the specific language used in the instruments is outcome-determinative. In the top leases, the lessors specifically retained unto themselves all vested interests fixed by the underlying leases, and thereby expressed an intent not to convey any presently vested interests to the lessee. Whereas in the Deed, the grantors conveyed a portion of their vested possibility of reverter, and reserved a specific portion of that vested interest unto themselves.

### The Top Leases

■ By three points of error, the Hammans contend the trial court erred in determining that the Rule invalidates the top leases as a matter of law. They assert the top leases conveyed vested possibilities of reverter to John Hamman, Jr., and therefore, are not subject to the Rule. After carefully analyzing the words used in the top lease conveyances, we disagree.

In *Peveto v. Starkey,* the Supreme Court relied specifically upon the words used in a grant in finding the grant to be void under the Rule. The Court stated:

> The printed portion of the granting clause conveyed a *presently vested* three-fourths royalty interest. However, following the property description, the parties inserted: 'this grant shall become effective only upon the expiration of [Peveto's] ... Deed....' This additional clause causes the Jones–Starkey deed to violate the rule.
>
> \*    \*    \*    \*    \*    \*
>
> [t]he *words used here* postpone the vesting of Starkey's interest until some uncertain future date. A grant "effective only upon" the termination of a determinable fee can-

not vest until the prior interest has terminated.... *The words "effective only upon" created a springing executory interest* in Starkey which may not vest within the period of the Rule; therefore, the deed is void.

*Peveto v. Starkey,* 645 S.W.2d at 772. (emphasis added).

Turning to the language used in these top leases, we point out the following provisions inserted by the parties below the property description:

> ... this lease shall be for a term and period (now called "primary term") covering and embracing, and including also, ten (10) years *after and subsequent to* the forfeiture, or to the expiration, of said lease [to Shell/Superior]....
>
> It being particularly agreed and understood that during the existence and continuance of said prior lease that the rights, *interests, estate,* privileges and royalties, *as fixed thereby,* of said Lessors *shall remain vested in* and held and possessed by said *Lessors,* free of all claims and demands whatsoever by said John Hamman, Jr. .... (emphasis added).

Under these lease provisions, George and John expressed an intent to preclude a present conveyance of any interest whatsoever to the lessee, by stating that any interest or estate owned by them under the bottom leases was to *remain vested in them* throughout the existence of the bottom leases, and free of *all claims and demands* by John Hamman, Jr. These top leases were made subject to, and specifically designated to commence *after and subsequent to* the expiration of, the bottom leases. Furthermore, the parties marked through the printed provision in each lease stating that the lease would be for a primary term "from date hereof," indicating the lease term was not to begin on the date of the document's execution.

Thus, although George and John owned possibilities of reverter at the time of the conveyances, under the express language of these top leases, they did not make present conveyances of their interests. Instead, the top leases conveyed interests that would vest in the grantee only upon termination of the

bottom leases, and it is undisputed that the bottom leases could continue for an indeterminate amount of time. Consequently, the interests conveyed by the top leases had the potential for vesting outside the period provided by the Rule, and are void as a matter of law.[4]

The Hammans alternatively contend the trial court erred in concluding that the top leases violate the Rule because (1) the Rule should not apply to modern commercial transactions, (2) the top leases were ratified after the Rule ceased to apply, (3) an equitable "wait and see" approach should be used to uphold the top leases, and (4) the *cy pres* doctrine or a perpetuities savings clause should be used to save the top leases.

■ In a summary judgment proceeding, no issue defeating the movant's entitlement shall be considered on appeal as grounds for reversal, if not presented to the trial court by written answer or response. Tex.R.Civ.P. 166a(c); *McConnell v. Southside Ind. School Dist.*, 858 S.W.2d 337, 343 (Tex.1993); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979). "The non-movant must expressly present to the trial court any reasons to *avoid* movant's entitlement, such as those set out in rules 93 and 94 ... and failing to do so, may not later assign them as error on appeal." *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d at 678–79.

■ The record shows the Hammans did not urge the trial court to uphold the leases as modern commercial transactions, nor did they urge an equitable wait and see approach. Further, as justification for raising *cy pres* on appeal, they argue that because defendants' replies to their response to summary judgment motions mentioned the unpersuasiveness of a *cy pres* argument, such a

reference to *cy pres* was recognition that the issue was before the trial court. Because we conclude, in accordance with Rule 166a and *Clear Creek*, that a movant's mention of a non-movant's ground of avoidance does not relieve the non-movant of the burden to expressly present that ground to the trial court, *cy pres* was not properly raised. The Hammans adequately presented only the ratification contention to the trial court. Hence, the other asserted contentions are waived, and we need only address whether the top leases were ratified.

■ The Hammans assert that a series of events, occurring after the execution of the top leases, removed any invalidity which may have existed with respect to those leases. They point to ratification agreements signed by John Hamman and George Hamman's successor in interest, division orders acted upon by various defendants, multiple assignments made "subject to" the top leases, subleases obtained by Bright from lessees of the top leases, and ratification agreements executed by Atlantic at Bright's request. The Hammans argue that because these actions occurred after the bottom leases had in fact expired, the perpetuity issue no longer existed, and the later ratifications were valid. We disagree.

All parties cite cases in support of their respective positions concerning ratification, and we recognize the emergence of competing lines of authority with respect to ratification of void instruments.[5] However, we have not been cited to, nor have we found, any case which specifically determines or even addresses whether a conveyance, found to be void *ab initio* as violative of the rule against perpetuities, subsequently can be ratified after the potential perpetuity has, in fact, expired. Consequently, we must follow the

4. In reaching our conclusion, we need not decide whether all top leases violate the rule against perpetuities, as the inserted language in *these* leases prevented any present vesting. For suggested "Ways To Avoid The Peveto Snare," see Nelson Roach, *The Rule Against Perpetuities: The Validity Of Oil And Gas Top Leases And Top Deeds In Texas After Peveto v. Starkey*, 35 Baylor L.Rev. 399, 410 (1983).

5. Compare *Humble Oil & Refining Co. v. Clark*, 126 Tex. 262, 87 S.W.2d 471 (1935) and progeny (holding that the terms of a void instrument may be ratified), with cases such as *Pure Oil Co. v. Swindall*, 58 S.W.2d 7 (Tex.Comm'n App.1933, holding approved), *Jack v. State*, 694 S.W.2d 391 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.), and *Mayfield v. Troutman*, 613 S.W.2d 339 (Tex. Civ.App.—Tyler 1981, writ ref'd n.r.e.) (each holding that a void instrument may not be ratified).

unequivocal mandate of our constitution with respect to perpetuities.

■ An agreement made in violation of the constitution or a statute is illegal and absolutely void, and is not subject to ratification. *Jack v. State*, 694 S.W.2d 391, 397 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Continental Fire & Cas. Ins. Corp. v. American Mfg. Co.*, 221 S.W.2d 1006, 1009 (Tex.Civ.App.—Fort Worth 1949, writ ref'd). In that regard, the constitutional mandate that perpetuities shall never be allowed must be relentlessly enforced. *Brooker v. Brooker*, 106 S.W.2d at 254. Having determined that the top leases were void *ab initio* under the Rule, and if enforced would violate the constitutional provision against perpetuities, we conclude that they could not be ratified. Points one, two, and three are overruled.

### The Non–Participating Royalty Interest

■ By cross points, Bright, Shell and Atlantic (the cross-appellants) claim the perpetual non-participating free royalty interest reserved by the Hammans in the Rio Grande deed violates the Rule, and is therefore void as a matter of law. We disagree.

Mindful that a possibility of reverter, the interest left in a grantor after the grant of a fee simple determinable, is a freely assignable vested right, and that upon the termination of the lease, the mineral estate ordinarily reverts to the grantors of the lease, their heirs or assigns, we turn to the Supreme Court's decision in *Jupiter Oil Co. v. Snow*, for guidance.

In *Jupiter*, the court construed a mineral deed, which was executed during the existence of, and subject to, a lease, in order to determine the portion of minerals owned by the grantee after the lease expired. The mineral deed in *Jupiter* contained lease termination language not identical, but very similar, to the language in the Hamman deed. The Court held that the interest conveyed by the deed to the grantee was a portion of the possibility of reverter, and implicitly determined that the grantor retained or reserved a portion of the possibility of reverter. *Jupiter Oil Co. v. Snow*, 819 S.W.2d at 468–69.

The *Jupiter* court relied on *Tipps v. Bodine*, and the conveyance language in *Tipps* is virtually indistinguishable from the language in the deed before us. In *Tipps*, the Texarkana court concluded the conveyance was of a portion of the possibility of reverter, as was the interest reserved. *Tipps v. Bodine*, 101 S.W.2d at 1078–79.

When the Hammans executed the deed to Rio Grande, they owned: (1) the surface estate; (2) a one-eighth royalty interest payable under the bottom leases and the other lease (the underlying leases), and (3) possibilities of reverter in the mineral interests conveyed by the underlying leases. The Deed provided:

This conveyance being so made subject to the [bottom leases, the top leases, and the other lease] ... so covering the lands conveyed hereby, all of which leases are now of record, ... it is particularly agreed, and this conveyance is made subject thereto, and said reservation and the terms and stipulations hereof relative thereto, that *Grantee* ... shall receive and be entitled to one-half the royalties payable thereunder, and all of the reversionary rights in the minerals, *except* that there is hereby *reserved to Grantors ... one-half (½) of all royalties accruing and/or payable under said leases, and, in event of the termination, forfeiture or expiration of said leases, as and when same may, respectively, so terminate, forfeit, or expire, a perpetual non-participating free royalty interest* in and to all the minerals in, upon, or under the lands conveyed hereby as follows:

(a) On oil, one-sixteenth (⅟₁₆) of that produced and saved from said land ...;

(b) On gas, including casinghead gas, or other gaseous substance, ... the market value at the well of one-sixteenth (⅟₁₆) of the gas so sold or used, ... on gas sold at the wells the royalty shall be one-sixteenth (⅟₁₆) of the amount realized from such sale;

(c) On all other minerals mined, one-sixteenth (⅟₁₆), ... except that on sulphur mined, the royalty shall be fifty

cents ($.50) per long ton. (emphasis added).

By this deed, the Hammans conveyed to the Grantee one-half of the royalties payable under the oil and gas leases, and all of reversionary rights in the minerals, *except* they reserved one-half of all royalties accruing and payable under the leases and *the possibility of reverter* attributable to the described perpetual non-participating free royalty interest. The legal effect of this reservation is that the Hammans, their heirs or assigns retained ½ of their ⅛ royalty interest in and to the underlying leases as long as the leases continued. However, when the leases ended, by operation of law, the Hammans, their heirs and assigns continued to own and hold the NPRI which was reserved from the possibility of reverter. *See Jupiter Oil Co. v. Snow,* 819 S.W.2d at 468–69. Bright, Shell and Atlantic cross-appellants' points of error are overruled.

The judgment of the trial court is affirmed.

### OPINION OVERRULING MOTIONS FOR REHEARING

On motion for rehearing, Bright & Company, et al. (Bright) contend we erred in concluding that the perpetual free royalty interest reserved in the Rio Grande deed was not subject to the rule. In addition to other challenges previously raised, Bright claims we concluded the interest was valid simply by determining that it was created out of a possibility of reverter, without regard to when the interest actually vested. We disagree.

■ Bright is correct in stating that even if an interest is carved out of a possibility of reverter, its validity must still be determined by asking whether the vesting of the interest is contingent upon an event which may not occur within the time allowed by the rule against perpetuities. Indeed, we stated as much in our original opinion in discussing the general principals of possibilities of reverter. Nevertheless, our agreement with Bright as to the appropriate analysis does not change our conclusion that the interest reserved in the deed was presently vested at the time of the conveyance, with only possession and enjoyment delayed until some uncertain time in the future. *Luckel v. White,* 819 S.W.2d 459,

464 (Tex.1991); *see also Jupiter Oil Co. v. Snow,* 819 S.W.2d 466, 468–69 (Tex.1991).

■ We are also again unpersuaded that *Peveto v. Starkey,* 645 S.W.2d 770 (Tex.1982), is outcome-determinative of the deed in question. Bright asserts that in *Peveto,* "the grant violated the Rule because the future royalty *could not become effective* until the determinable royalty expired," and is similar to and interpretive of our deed. Bright's interpretation misconstrues the Supreme Court's holding. In *Peveto,* the Supreme Court stated that because the specific language used in the deed prevented the *grant* from becoming effective until some uncertain future event, the instrument violated the Rule. It was not construing the validity of some potentially contingent interest contained within a presently effective grant, it was construing the validity of the grant itself.

In the conveyance made by the Hammans, the language relating to the reservation states that "there *is hereby reserved* to Grantors ... one-half (½) of all royalties ... and, in event of the termination ... a perpetual non-participating free royalty interest...." (emphasis added.) Both royalties are reserved to the grantors in one sentence, and the only verb used indicates a present reservation. There is no language conditioning the effectiveness of the reservation upon an uncertain future event.

As stated in *Luckel,* and aptly quoted by Bright, "Since the deed makes a present conveyance of the possibility of reverter, there is no violation of the rule against perpetuities. In particular, the deed did not condition the *effectiveness of the grant* on the expiration of the Coe lease." *Luckel v. White,* 819 S.W.2d at 464. (citations omitted.) (emphasis added.) Because we remain convinced that, at the time of the conveyance, the deed made a presently vested reservation of a portion of the possibility of reverter, we overrule Bright's motion for rehearing. Likewise, we have considered each of the motions for rehearing filed by the respective parties and overrule each party's motion.