

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| IN THE MATTER OF TRUST A AND TRUST C. ESTABLISHED UNDER THE BERNARD L. AND JEANNETTE FENENBOCK LIVING TRUST AGREEMENT, DATED MARCH 12, 2008. | §<br>§<br>§<br>§<br>§<br>§ | No. 08-19-00071-CV<br><br>Appeal from<br><br>Probate Court Number 2<br><br>of El Paso County, Texas<br><br>(TC# 2017-CPR00674) |

**O P I N I O N**

This appeal arises from one of several cases involving disputes among siblings and their progeny over assets in and governance of a family trust and a company owned by the siblings' parents during their lifetimes.[1] Here, Appellant Glenna Gaddy (Glenna), a co-trustee of the family trust, transferred stock in the family's company from the family trust (in which she and others were beneficiaries) to her personal trust, based on directives in the family trust agreement and her mother's will. However, the stock transfer was completed absent the consent or approval of the other co-trustee, Appellee Mark Fenenbock (Mark).[2] Mark is also one of the beneficiaries of the

---

[1] In addition to cases brought at the trial court level, some combination of the Gaddys and the Fenenbocks appeared previously in this Court. Of those cases, we issued opinions in *In re Fenenbock*, 621 S.W.3d 724, 726 (Tex.App.—El Paso 2020, orig. proceeding [mand. denied])(regarding disqualification of counsel); and *Fenenbock v. W. Silver Recycling, Inc.*, 601 S.W.3d 32, 36-37 (Tex.App.—El Paso 2020, no pet.)(appealing the trial court's judgment on valuation of share prices in the family company following a merger).

[2] One of Mark's children, Lauren Fenenbock, was originally identified by Appellant as a second Appellee. However,

family trust. After she transferred the shares to her personal trust, Glenna sold the stock from her trust in equal shares to her two sons.

Mark filed the underlying lawsuit seeking, among other things, a declaration that he is a co-trustee under the trust agreement. The trial court previously granted summary judgment in favor of Mark on this issue. Glenna now appeals an order from the trial court declaring the stock transfer from the family trust to her personal trust void. The order requires the disputed stock to be restored to the trust from which it originated and orders Glenna to undertake certain actions.

We find the trial court committed fundamental error and lacked subject matter jurisdiction to enter the order for failing to join Glenna's sons—the purported owners of the stock in question—as parties to the lawsuit, since the order (a) effectively adjudicates ownership of the stock in which they claim an interest, and (b) is a declaration of rights by which they could not be bound as non-parties to the declaratory judgment action. For this reason, we vacate the order voiding the stock transfer and remand to the trial court for further proceedings consistent with this opinion.

## BACKGROUND[3]

Bernard L. Fenenbock (Bernard) and Jeannette Fenenbock (Jeannette) were the parents of Glenna and Mark. Glenna has two children, Lane Gaddy and Weston Gaddy. During their lifetimes, Bernard and Jeannette owned and operated W. Silver Recycling, Inc. (the Company). Bernard and Jeannette established The Bernard L. and Jeannette Fenenbock 2008 Living Trust (Family Trust) on March 12, 2008. The terms of the trust agreement created five sub-trusts within

---

she subsequently informed the Court that although she is a party in the underlying case, she is not a party to this appeal.

[3] A more detailed background summary of the family can be found in our opinion in *In re Fenenbock*, 621 S.W.3d at 727-28.

2

the Family Trust: Trust A, Trust B, Trust C, the Glenna Gaddy Trust (Gaddy Trust) and the Mark

Fenenbock Trust (Fenenbock Trust).

Bernard and Jeannette were the initial trustees of the Family Trust. The trust agreement

named the successor trustees as follows:

B. **The Trustee**

.                    .                    .

3. Successor Trustee. This provision shall govern the appointment
and succession of Trustees of this Trust during its continuance:

(a) If **JEANNETTE FENENBOCK** fails or ceases to act as
Trustee, **BERNARD L. FENENBOCK** shall serve as sole Trustee.
If **BERNARD L. FENENBOCK** fails or ceases to act as Trustee,
**JEANNETTE FENENBOCK** and **GLENNA GADDY** shall serve
as Co-Trustees. In the event that **GLENNA GADDY** fails or ceases
to act as Co-Trustee, **LANE GADDY** or **MARK FENENBOCK**,
alternatively and in that order, shall serve as Co-Trustee in her place.

(b) When both the initial Trustees cease to serve as such,
**MARK FENENBOCK** and **GLENNA GADDY** shall serve as
successor Co-Trustees of this Trust. If only one is able to serve, he
or she shall serve as sole Successor Trustee . . . .

.                    .                    .

4.      Majority Vote. As a general rule, in all cases in which there
are multiple Trustees of any trust arising hereunder, *any action of the trust shall be
taken or withheld by the Trustees based upon the vote of a majority of the Trustees
then acting as such*. In the event that: (i) a Co-Trustee dies or resigns, and a
successor Co-Trustee has not been appointed; or (ii) a Co-Trustee is not able to
participate in an action of the trust because such Co-Trustee is mentally
incapacitated as evidenced by either a judicial determination or the affidavit of a
licensed physician who has evaluated such Co-Trustee, the remaining Co-Trustee
or sole Trustee may act on behalf of the trust. *In any instance in which two Co-
Trustees are serving jointly, any action of the Trustee shall require the joinder and
consent of both Co-Trustees.* ln the event that there are more than two Co-Trustees
and a particular action is taken or withheld based upon the vote of the majority of
the Trustees, any minority Trustee who opposes the particular action of the majority
of the Trustees may indicate such opposition in writing and deliver it to all other

3

Co-Trustees and those beneficiaries who have a present interest in the trust. Except as otherwise provided in Section 114.006 of the Texas Trust Code, any Co-Trustee who dissents from and does not acquiesce in any action approved by the majority Trustees shall have no liability for any action so approved, except that the dissenting Co-Trustee shall insure that a written record is made of his or her dissent. [Emphasis added].

In May 2012, Bernard and Jeannette signed a First Amendment to the Family Trust. The First Amendment changed certain language in Section B(3) of Article X, General Trust Provisions, concerning the trustees:

> We wish to add Successor Co-Trustees and change the order in which they are listed. Accordingly, this provision is amended and shall henceforth read as follows:
>
> B.    **The Trustee**
>
> .            .            .
>
> 3.    <u>Successor Trustee</u>. This provision shall govern the appointment and succession of Trustees of this Trust during its continuance:
>
> (a) If Jeannette Fenenbock fails or ceases to act as Trustee, Bernard L. Fenenbock and Glenna Gaddy shall serve as Co-Trustees. In the event that Glenna Gaddy fails or ceases to act as Co-Trustee, Mark Fenenbock or Lane Gaddy, alternatively and in that order, shall serve as successor Co-Trustee in her place. If Bernard L. Fenenbock fails or ceases to act as Trustee, Jeannette Fenenbock and Glenna Gaddy shall serve as Co-Trustees. In the event that Glenna Gaddy fails or ceases to act as Co-Trustee, Mark Fenenbock or Lane Gaddy, alternatively and in that order, shall serve as successor Co-Trustee in her place.
>
> By execution hereof, we jointly make and accept this amendment. *All other provisions remain unchanged*. [Emphasis added.]

After Bernard's death in October of 2012, Jeannette and Glenna served as the co-trustees of Trusts A, B and C pursuant to the Family Trust and the First Amendment. In November of 2015, Jeannette executed a Second Amendment to the Family Trust, which provided in pertinent part:

4

**D. Gift of Trust Remainder.** Subject to the forgoing gifts, the Trustee shall distribute the trust remainder in equal shares to the children of the Settlors, in trust, subject to the provisions set out in Article VIII of this agreement. In dividing the trust remainder in equal shares between the trusts created for Settlors' children, *all of the interest in W. Silver Recycling, Inc., or its successor in interest, held in trust shall be allocated to the trust for the benefit of **GLENNA GADDY** and her descendants, with assets of an equivalent value being allocated to the trust for the benefit of **MARK FENENBOCK** and his descendants*. [Emphasis added.]

At approximately the same time, Jeannette executed her Last Will and Testament, which included the same language as the Second Amendment.[4] Jeannette passed away on November 9, 2016, and Glenna became the sole independent executor of Jeannette's estate.

Following her mother's death, Glenna believed she was the sole trustee of the Family Trust by virtue of the language in the First Amendment.[5] On April 7, 2017, Glenna transferred 64,806 common stock shares of the Company from both Trusts A and C to the Gaddy Trust, which she believed to be in accordance with the terms of the Family Trust agreement and Jeanette's will. Prior to the transfer, on March 31, 2017, Glenna obtained a business valuation by SBNG, PC, which concluded the fair market value of the Company shares owned by Trust A and Trust C totaled $3,450,000 as of December 31, 2016.

---

[4] Jeanette's will stated:

> I have exercised the special testamentary power of appointment described above to direct that at my death, **when the assets remaining in Trust A, Trust B and Trust C are divided in equal shares between the trusts created under the Trust Agreement for the benefit of MARK and GLENNA, all of the interest in W. Silver Recycling, Inc., or its successor in interest, held in the trusts shall be allocated to the trust for the benefit of GLENNA and her descendants, with assets of an equivalent value being allocated to the trust for the benefit of MARK and his descendants.** I further exercise the special testamentary power of appointment described above to direct that neither MARK nor GLENNA shall be the Trustee of the trust created for the benefit of the other under the Trust Agreement unless designated as such by the Primary Beneficiary of the trust. [Emphasis added].

[5] Glenna's position was that the First Amendment replaced Article X, section B, subsection 3 of the Family Trust governing successor trustees in its entirety. Therefore, according to Glenna, subsection 3(b), which established Mark and Glenna as co-trustees following the death of both Jeannette and Bernard, was not applicable.

Following Glenna's transfer of the stock to the Gaddy Trust, but still the same day, Glenna sold the stock in equal shares to Lane[6] and Weston. Lane and Weston each paid $1,725,000 to the Gaddy Trust for the purchase of their respective pairs based on the appraisal and valuation conducted by SBNG, PC at Glenna's behest. Three days after the stock sale by the Gaddy Trust to Lane and Weston, the Company paid a distribution of approximately $6 million on the Company stock owned by Glenna, Lane, and Weston, which included the stock purchased by Lane and Weston from the Gaddy Trust.

## PROCEDURAL BACKGROUND

Mark filed this lawsuit asserting various causes of action against Glenna and seeking a declaration of rights under the Family Trust. Among the declaratory relief sought, Mark requested a declaration that the terms of the Family Trust agreement and subsequent amendments designate him as a co-trustee alongside Glenna, with "co-equal rights in the administration, winding up, and termination of the Sub-Trusts[]" created under the Family Trust.[7] In her answer to the suit and counterclaim for declaratory relief, Glenna asserted the terms of the First Amendment to the Family Trust eliminated establishment of Mark as a trustee of Trusts A, B, and C, unless Glenna failed or ceased to serve in her capacity as trustee.

Mark and Glenna filed competing motions for partial summary judgment on the issue of whether the Family Trust and its amendments designated Mark and Glenna as co-trustees of the Trusts A, B, and C, or if the designation rested with Glenna alone. The trial court granted Mark's

---

[6] Lane has been the CEO of the Company since 2012.

[7] "Sub-Trusts," as used here, refers to Trusts A, B, and C. Each party acknowledges, for their respective personal sub-trusts created as part of the Family Trust, they alone serve as trustee.

motion, declaring Mark "has been and currently is a Co-Trustee of the [Family Trust]" pursuant to its original terms and all subsequent amendments. The trial court denied Glenna relief.

After obtaining the declaration on his status as co-trustee, Mark filed the motion to void the stock transfer. He sought declaratory relief from the trial court to void the transfer based upon Section 114.008(a)(3) of the Trust Code. He requested restoration of the shares of stock to Trusts A and C, along with dividends paid on those shares, so that the co-trustees might together agree on the valuation process of the shares "for purposes of complying with the Second Amendment to the [Family] Trust and distributing its equivalent value to [Mark] pursuant to TEX. TRUST CODE § 114.008(a)(9)." Mark also requested an accounting from Glenna for the trust property.

Glenna opposed the motion to void the transfer, arguing any unilateral actions she took while Mark's status as co-trustee was in dispute was done "to preserve the assets of Trusts A, B and C, and to carry out the wishes of Bernard and Jeannette with respect to the maintenance and distribution of the assets." She also argued, which Mark does not dispute, the Family Trust agreement awarded the Company stock in Trusts A and C to the Gaddy Trust, and that she and her descendants alone are entitled to it. In essence, she claimed, voiding the stock transfer was inappropriate relief since the Family Trust compelled the transfer of the shares to her trust. She believed the motion to void and the relief Mark requested was done solely for purposes of delay and needless expense, and made in bad faith. She also represented to the trial court the shares at issue "have already been sold to Lane Gaddy and Weston Gaddy for value received[,]" and notified the trial court they should be joined as necessary parties.

On January 30, 2019, the trial court held a hearing on a number of pending motions, including the motion to void the transfer. Without hearing argument from the parties, the trial court

verbally granted the motion to void the transfer. Thereafter, while a proposed order on the motion was circulating, Glenna filed objections to the proposed order, which included the failure to join Lane and Weston as indispensable parties.[8] Over Glenna's objections, the trial court entered the order voiding the transfer on February 21, 2019.

## DISCUSSION

Glenna offers three reasons why we should reverse the order of the trial court. First, she argues the trial court erred in granting Mark's motion because he failed to conclusively establish a breach of trust. Second, she claims there is no basis to unravel the stock transfers she made to the Gaddy Trust. Third, she asserts compliance with the trial court's order is impossible because it requires action by persons who are not parties to the suit, and compliance is unwarranted because no one other than the Gaddy Trust has claim to the Company stock dividends.

Before we reach the merits of Glenna's arguments on appeal, we find it incumbent to address a matter apparent to us from the record which neither party raises as a formal issue: whether the absence of certain persons from the proceeding precluded the trial court's jurisdiction to issue its order voiding the transfer. In her third issue, Glenna posits compliance with the trial court's order is impossible because it requires the Company stock to be restored to Trusts A and C, but the stock is not presently owned by any person who is a party to the litigation. In response to this issue, Mark counters she cannot assert arguments on behalf of persons who are not parties to the lawsuit because she lacks standing to do so. What neither party addresses, however, is whether the trial court had jurisdiction to enter an order voiding the stock transfer without making subsequent purchasers of the stock parties to the lawsuit. We consider this question first.

---

[8] By letter to the trial court, Glenna requested a hearing on the objections to the form of the order. Based on the record before us, it appears no such hearing was conducted.

8

### *Applicable Law*

The Declaratory Judgment Act requires "joinder of persons whose interests would be affected by the judgment." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004)(*citing* TEX.CIV.PRAC.&REM.CODE ANN. § 37.006). Joinder is mandatory for persons "who have or claim any interest which would be affected by the declaration" in a declaratory judgment action. *Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385, 389 (Tex. 1977).

Joinder of parties in a declaratory judgment action is governed by Rule 39 of the Texas Rules of Civil Procedure. *Brooks*, 141 S.W.3d at 162 (*citing Clear Lake*, 549 S.W.2d at 390); *see also* TEX.R.CIV.P. 39. Rule 39 states, "A person who is subject to service of process shall be joined as a party in the action if . . . he claims an interest relating to the subject of the action . . . ." TEX.R.CIV.P. 39. It is the duty of a trial court to join persons meeting the definitions of indispensable parties under Rule 39 and Section 37.006 of the Texas Civil Practices and Remedies Code when those persons are subject to service of process. *See* TEX.R.CIV.P. 39; *Clear Lake*, 549 S.W.2d at 389-90. A trial court abuses its discretion when, at the request of a party, it fails to join as a party a person who is subject to service of process and whose presence is "needed for a just adjudication[.]" *Kodiak Resources, Inc. v. Smith*, 361 S.W.3d 246, 252 (Tex.App.—Beaumont 2012, no pet.); *see also Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 913 (Tex. 2017)("[A]bsent parties expressly claim[ing] an interest in the subject of the litigation through their deeds and leases[]" must be joined as parties to the suit). Persons who are not made parties to declaratory judgment proceedings "shall not be prejudiced by the declaration of the court[.]" *Clear Lake*, 549 S.W.2d at 390.

Prior to Rule 39's amendment in 1971, Texas courts considered the absence of an indispensable party a per se jurisdictional issue; that is, the absence of a party whose presence was

required under the former rule's language removed jurisdiction for a trial court to hear the issue. *See Petroleum Anchor Equipment, Inc. v. Tyra*, 406 S.W.2d 891, 892 (Tex. 1966).[9] Since its amendment, Texas courts, at the direction of the Texas Supreme Court, have been loath to treat the failure to join an indispensable party as a jurisdictional defect which would void a judgment rendered in the indispensable party's absence. *See Cooper*, 513 S.W.2d at 203-04 ("[T]oday's concern is less that of the jurisdiction of a court to proceed and is more a question of whether the court ought to proceed with those who are present. . . . Under the provisions of our present Rule 39 it would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined.").[10] Instead, courts typically undertake an analysis of whether a trial court abused its discretion in either (a) denying a party's motion to join another who was subject to process, and/or stay the proceedings until joinder can be made; or (b) where a person who should be joined cannot

---

[9] As the Texas Supreme Court stated regarding the pre-amendment Rule 39 analysis:

> Prior to the amendment to Rule 39, Texas resolved questions of joinder of parties by efforts to catalogue parties as 'proper,' 'necessary,' 'indispensable,' 'conditionally necessary,' or 'insistible.' Typical of that approach is this court's preamendment opinion in Petroleum Anchor Equipment, Inc. v. Tyra, Supra, where it is stated:
>
>> It is at once apparent that the "necessary" parties of which the rule speaks fall into two categories: (1) those who under the paragraph (a) "shall be made parties," and (2) those who under paragraph (b) "ought to be parties if complete relief is to be accorded between those already parties." It is also at once apparent that "persons having a joint interest" within the meaning of paragraph (a), properly interpreted, are Indispensable parties, but that those who simply ought to be joined if complete relief is to be accorded between those already parties are not Indispensable. The rule expressly confers discretion upon trial courts to proceed without joinder of persons in the second category if jurisdiction over them can be acquired only by their consent or voluntary appearance. If joinder of such persons is discretionary, their joinder cannot be essential to jurisdiction of a court to proceed to judgment.

*Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200, 203 (Tex. 1974)(*citing Petroleum Anchor Equipment, Inc.*, 406 S.W.2d at 893).

[10] Among the considerations a trial court should undertake in deciding whether to proceed in a person's absence are "the extent to which an absent party may be prejudiced," and "whether in equity and good conscience the action should proceed or be dismissed." *Id.* (*citing Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, (1968)).

be made a party, whether the proceedings should continue with the existing parties or if equity dictates the case should be dismissed on account of the person's absence. *See id.* at 204.

However, although rare, circumstances exist where joinder of parties is required for the trial court to have jurisdiction over the matter being litigated. *See, e.g.*, *Brooks*, 141 S.W.3d at 163-64 (trial court lacked jurisdiction to declare the rights of persons who were not joined in the proceedings); *Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017)(members of the commissioners court and/or the commissioners court itself were jurisdictionally-indispensable parties to suit for temporary injunction against county judge to reinstate county employee at a certain salary, which would require ratification by majority vote of commissioners); *Gaal v. Townsend*, 14 S.W. 365, 365-66 (Tex. 1890)(same, but procedural vehicle was writ of mandamus); *Love v. Woerndell*, 737 S.W.2d 50, 51-52 (Tex.Civ.App.—San Antonio, 1987, writ denied)(in a suit involving title to real estate, heirs are necessary party defendants and their absence as party defendants voids any judgment purporting to vest title in the plaintiff). A trial court has no jurisdiction to declare the rights of parties who are not before it. *Brooks*, 141 S.W.3d at 163-64 ("A declaratory judgment requires a justiciable controversy *as to the rights and status of parties actually before the court for adjudication*, and the declaration sought must actually resolve the controversy.")[Emphasis added]. An opinion of the court which is reached without a case or controversy is merely advisory and barred by the Texas Constitution. *Id.* at 164 (*citing* TEX.CONST. art. II, § 1).

### *Preservation of Error*

In the record before us, the issue of Lane and Weston's purchase of the Company shares from the Gaddy Trust and their absence from the proceedings was first raised in Glenna's response to the motion to void the transfer. Glenna protested a second time in her objections to the order

11

declaring the transfer void and specifically argued Lane and Weston were indispensable parties. However, our record contains no ruling on that objection, despite Glenna's letter to the court requesting a hearing on the objections and a ruling before the trial court signed the order granting Mark's motion. Under these circumstances, we might construe the trial court's failure to rule as an implied ruling based on its subsequent order granting the motion to void the transfer. *See AIS Services, LLC v. Mendez*, No. 05-07-01224-CV, 2009 WL 2622391, at \*1-2 (Tex.App.—Dallas Aug. 27, 2009, no pet.)(mem.op.)(discussing implied rulings).[11]

Although she acknowledges the impropriety of Lane and Weston's absence from the proceedings in her brief on appeal, Glenna omits an indispensable party argument as it pertains to jurisdiction. However, under Rule 39, where a person is indispensable such that his absence deprives the trial court of jurisdiction to render judgment over the subject matter, his absence constitutes fundamental error which can and should be noticed by a reviewing court on its own motion. *See Dueitt v. Dueitt*, 802 S.W.2d 859, 861 (Tex.Civ.App.—Houston [1st Dist.] 1991, no writ); *Love*, 737 S.W.2d at 52; *Sherrill v. Plumley's Estate*, 514 S.W.2d 286, 298 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.)(*citing Petroleum Anchor Equipment, Inc.*, 406 S.W.2d at 892);[12] *see also Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982)("Fundamental error

---

[11] Inexplicably, neither party moved to join Lane or Weston as third-party defendants, nor does the record reflect the trial court ordering either side to do so sua sponte.

[12] *Petroleum Anchor Equipment, Inc.* was overruled in part by *Cooper*, 513 S.W.2d at 203. In *Cooper*, the Texas Supreme Court repudiated its prior position in *Petroleum Anchor Equipment, Inc.* which somewhat categorically deprived a trial court of jurisdiction in the absence of an indispensable party, which the former rule described as "persons having a joint interest." *See Cooper*, 513 S.W.2d at 203-04 (*referencing Petroleum Anchor Equipment*, 406 S.W.2d at 893). Instead, the Supreme Court in *Cooper* clarified that the revision of Rule 39 was intended to avoid jurisdictional concerns when the trial court "does have subject matter jurisdiction over the action before it" and can adequately adjudicate the dispute between the parties who are already joined to the action. *Id.* at 204. However, Rule 39's revision and the Supreme Court's clarified analysis of it does not eliminate situations where the absence of a person from the proceedings precludes a trial court's jurisdiction over the subject matter. *See Brooks*, 141 S.W.3d at 164 (trial court has no jurisdiction to issue a judgment declaring the rights of persons who are not a party to the action; such an opinion would be purely advisory).

survives today in those rare instances in which the record shows the court lacked jurisdiction . . . ."). Accordingly, we proceed of our own volition to determine whether Lane and Weston's joinder was mandatory to vest the trial court with jurisdiction over the proceedings seeking to void the stock transfer.

### Analysis

Although situations involving a jurisdictionally-indispensable party are infrequent, as we previously discussed, they do still arise. *See, e.g., Motor Vehicle Bd. of Texas Dept. of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 37 S.W.3d 538, 540-41 (Tex.App.—El Paso 2001, pet. denied)(motor vehicle board was jurisdictionally indispensable party to suit seeking declaration that blue law was unconstitutional when the board was the only entity seeking to enforce it against the plaintiff); *Lone Starr Multi Theatres, Inc. v. State,* 922 S.W.2d 295, 297 (Tex.App.—Austin 1996, no writ). For example, in *Brooks*, a homeowners association covering six subdivisions in Harris County sued several homeowners for declaratory relief seeking a judgment declaring that various activities it conducted, including assessing late fees on unpaid assessments, were within its authority. 141 S.W.3d at 160-61. The homeowners counterclaimed for declaratory relief that the association acted outside of its authority in raising assessments or charging late fees without the property owners' vote. *Id.* at 161. The trial court awarded summary judgment in Northglen's favor, which the court of appeals affirmed in part and reversed in part based on the distinct terms of the deed restrictions in each subdivision. *Id.* However, by petition to the Texas Supreme Court, the association asserted for the first time that the trial court committed fundamental error and lacked subject matter jurisdiction because all the property owners within the six subdivisions were not joined as parties to the suit. *Id.* The association claimed all the property owners were required

parties and the trial court lacked jurisdiction to interpret the deed restrictions in those subdivisions, and for those persons, who were not a part of the suit. *Id.* at 161-62.

The parties recognized the trial court certainly had subject matter jurisdiction to declare the rights of the eight named homeowners in the lawsuit. *Brooks*, 141 S.W.3d at 162. At issue was "whether the trial court should have refused to enter a judgment when a subset of the homeowners was not joined in the lawsuit." *Id.* The Supreme Court determined the trial court did not commit error by not joining the remaining homeowners because, as to the eight named homeowners and their rights relative to the association, the relief awarded completely adjudicated the dispute between them. *Id.* (*citing Caldwell v. Callender Lake Prop. Owners Improvement Ass'n*, 888 S.W.2d 903, 907 (Tex.App.—Texarkana 1994, writ denied). Moreover, for any non-joined homeowner, subsequent individual claims against the association were available to adjudicate their rights under the deed restrictions since their rights could not be prejudiced by the outcome of a declaratory action to which they were not a party. *Id.* at 163. The result might be inconsistent judgments for the association; however, such inconvenience "is the product of its own inaction[]" in failing to initially join all interested parties or any other procedural vehicle it could have employed to avoid multiple or inconsistent judgments. *Id.*

However—and pertinent to our analysis in the instant case—the Supreme Court vacated those portions of the lower courts' judgments regarding the rights of persons in two subdivisions in which no plaintiffs resided. *Brooks*, 141 S.W.3d at 163-64. The Supreme Court pointed out there could be no case or controversy regarding interpretation of the deed restrictions in those two subdivisions because no one residing there was a part of the proceedings. *Id.* at 164. The court held that the absence of plaintiffs from those locations meant an absence of persons "for whom rights

14

could be declared[.]" *Id.* Accordingly, the trial court had no jurisdiction to enter a judgment declaring and interpreting the rights of those not present. *Id.*

An older case from the Waco Court of Civil Appeals seems factually similar to the present case. *See Reva Corp. v. Golden Light Coffee & Equip. Co.*, 379 S.W.2d 133, 135 (Tex.Civ.App.— Waco 1964, no writ). In that case, Golden Light sued Reva "for title to and possession of equipment" after Reva's lessee failed to pay the balance owed on the equipment it purchased from Golden Light. *Id.* When the lessee failed to pay Golden Light, Reva agreed to purchase the equipment for the amount of the debt owed, to which Golden Light agreed. *Id.* at 134. Thereafter, Reva refused to pay Golden Light, claiming Golden Light did not have valid title to the equipment because the equipment had become fixtures and thus part of the realty. *Id.*

Golden Light sued Reva in two separate suits; the first was a suit on sworn account for the debt owed, and the second was for title to and possession of the equipment. *Reva Corp.*, 379 S.W.2d at 134-35. The suits were tried simultaneously in a non-jury trial. *Id.* at 134. In the suit on sworn account, both the trial court and the Waco court of appeals determined the equipment had not become attached to the realty and Reva was liable to Golden Light for the amount owed on the debt. *See id.* at 134-35.

However, the Waco court reached the opposite conclusion of the trial court on the issue of joinder in the suit to determine possession and title of the equipment. There, Reva filed a plea in abatement alleging, among other things, that it executed a deed of trust on the building in which the equipment was located and installed which secured Reva's loan on the building, and the mortgagee, an investment company, as well as an insurance company, "were the present owners and holders of the liens and title to the equipment." *Reva Corp.*, 379 S.W.2d at 135. Accordingly,

15

Reva urged the trial court to abate the case and join the investment company and insurance company because they were "necessary and indispensable parties" within the jurisdiction of the court. *Id.* The trial court overruled the plea in abatement and, after trial, judgment was rendered in favor of Golden Light.[13] *See id*

On appeal of the trial court's order overruling the plea in abatement, the court of appeals found the investment company and the insurance company were both indispensable parties and the trial court should not have proceeded without both having been properly joined. *Reva Corp.*, 379 S.W.2d at 135. The subject matter of the case was to whom title and possession of the equipment belonged, and Golden Light's object was to recover title and possession. *Id.* Therefore, the investment company and insurance company, as purported lienholders and assignees of title to the equipment by Reva, "[t]heir interest [in title and possession of the equipment] was necessarily affected by the judgment." *Id.* The Waco court determined although the trial court found the non-joined parties could not have any rights in the equipment because Reva did not own title to the equipment it could assign to them, it was nevertheless error for the determination to have been made in their absence. *Id.* The Waco court noted nonparties cannot be bound by judgments rendered in their absence, even when it directly concerns the nonparties' interests. *Id.* The result is a court unable to "finally end the controversy even as between the [joined] parties[.]" *Id.* For these reasons, the court reversed the judgment and remanded the cause to the trial court.

---

[13] It appears the *Golden Light* opinion contains an error. The opinion states, "judgment was rendered declaring title to the equipment was in Reva." *Reva Corp.*, 379 S.W.2d at 135. However, it is clear from reading the remainder of the opinion that the trial court reached the opposite conclusion and found title belonged to Golden Light, which is the very reason Reva appealed the trial court's overruling of its plea in abatement and the joinder-of-parties issue. *Id.* at 135 ("The trial court did in fact conclude that Reva had no interest it could transfer, and that the non-joined parties 'obtained no lien on, or interest in, the property in question.' . . . Appellee answers that it proved the non-joined parties had no rights, because it won its case against Reva, thereby establishing the non-joined assignee or mortgagee could not have any title to or interest in the property."). We surmise this singular instance stating the trial court found title belonged to Reva is simply a misstatement.

We find the facts of this case pertaining to joinder analogous to *Reva*. Here, the trial court previously determined Glenna acted without the requisite consent of Mark as co-trustee in transferring the Company shares from Trusts A and C to the Gaddy Trust. The result, according to the trial court, is that the transfer is void. Similarly, the trial in *Reva* determined the equipment never became part of the realty and thus Reva never possessed title of the equipment to sell to the insurance company and investment company. *Reva Corp.*, 379 S.W.2d at 135.

If the Company shares had remained in the Gaddy Trust following the transfer, we would have no reason to question the trial court's jurisdiction over the parties to determine whether the transfer should be voided. However, long before this suit was filed, Glenna, as sole trustee of the Gaddy Trust, sold the Company stock for $3.25 million to Lane and Weston. The sale occurred on the same day Glenna transferred the shares from Trusts A and C into the Gaddy Trust under the belief that she was the sole trustee of the Family Trust and had authority to make the transfer. Similarly, Reva executed a deed of trust on the equipment in favor of the investor and insurance company, who therefore claimed ownership over it. *Reva Corp.*, 379 S.W.2d at 135. Reva executed the deed of trust based on its position that the equipment became attached to the realty, and thus title to the equipment vested with Reva and was Reva's to assign. *Id.*

Similar to our sister court's decision in *Reva Corp.*, we find the trial court's order declaring the transfer of shares void and ordering the stock's restoration to Trusts A and C could not have been made in the absence of the persons who purportedly own the stock by virtue of its sale to them following the transfer. The express subject matter of the underlying proceedings upon which Mark sought the court's declaration was whether Glenna had the authority to transfer the shares from Trusts A and C to the Gaddy Trust without Mark's consent. He sought, in essence, to divest

17

the Gaddy Trust of title to the shares by rendering the transfer void. Present ownership rights over the Company shares were squarely at issue in his motion to void the transfer, even though the parties agree the shares must ultimately be transferred to the Gaddy Trust per the terms of the Family Trust. The parties sought a determination over who rightfully owned the stock after the unauthorized transfer; accordingly, *all* who claimed to own the stock whose ownership rights would be determined by the trial court's declaration were indispensable to the trial court's subject matter jurisdiction over the proceeding. Even if it is ultimately determined Lane and Weston cannot own any rights to the Company stock because the Gaddy Trust did not own it at the time of its attempted sale to them, such a determination must be made with Lane and Weston present, since they currently claim ownership over the subject shares. *See Reva Corp.*, 379 S.W.2d at 136.[14] If they are not joined in this action, they cannot be bound by any declaration made concerning ownership of the Company stock. The effect of affirming the trial court's order when it does not adjudicate what rights, if any, Lane and Weston have to the shares would create competing claims of ownership between the Family Trust pursuant to the trial court's order, and Lane and Weston pursuant to their purchase agreement with the Gaddy Trust.[15] The relief awarded by the trial court is far from "a final and complete adjudication of the dispute for the parties who were before the court" because neither Glenna nor the Gaddy Trust claimed ownership of the transferred shares at

---

[14] "Appellee answers that it proved the non-joined parties had no rights, because it won its case against Reva, thereby establishing the non-joined assignee or mortgagee could not have any title to or interest in the property. The point is that this was determined in their absence. The subject matter of the suit was title and possession of the property. The object of the suit was to recover that title and possession. Their interest therein was necessarily affected by the judgment." *Reva Corp.*, 379 S.W.2d at 136.

[15] In his brief on appeal, Mark refutes Glenna's assertions that Lane and Weston can assert various defenses as bona fide purchasers. In the current proceeding, the validity of Lane and Weston's claims to the Company stock are not at issue, and we offer no opinion on whether they might be successful in asserting any defense they may raise. Our point is they should be given the opportunity to raise those defenses with the trial court before the trial court issues an order that would have the effect of voiding their purchase of the stock from the Gaddy Trust.

the time of the proceedings, and the parties who do claim ownership were not joined. *See Brooks*, 141 S.W.3d at 163-64 ("A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy."). The trial court's order was therefore a purely advisory opinion in the absence of those whose presence could "actually resolve the controversy" over who owns the shares. *Id.* at 164.

In the most simplified terms, the trial court issued an order which, if they were bound by it, effectively deprives Lane and Weston of the interest in the Company stock they purchased from the Gaddy Trust. There is no means for the trial court to void the stock transfer and leave Lane and Weston's interests undisturbed. Their absence from the underlying proceedings prevents the trial court from obtaining subject matter jurisdiction to issue an order that attempts to divest them of Company shares they purchased from the Gaddy Trust. *See Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 106-07 (Tex. 1981)(recognizing that "where a judgment would adversely affect the interests of absent parties who had no opportunity to assert their rights in the trial court[,]" the absent parties are "jurisdictionally indispensable" and failure to join them constitutes fundamental error); *see also Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 124-25 (where rendering judgment would prejudice the rights of absent parties who cannot be joined, the proper course is dismissal of the claim). As the United States Supreme Court articulated almost two hundred years ago in *Mallow v. Hinde*, 25 U.S. 193, 198 (1827):

> In this case, the complainants have no rights separable from, and independent of, the rights of persons not made parties. The rights of those not before the Court lie at the very foundation of the claim of right by the plaintiffs, and a final decision cannot be made between the parties litigant without directly affecting and prejudicing the rights of others not made parties. . . . [N]o Court can adjudicate directly upon a person's right, without the party being either actually or

19

constructivelly [sic] before the Court. *Id.*

Based on the foregoing, we see no alternative but to set aside the trial court's order voiding the transfer and dismiss this appeal. *See BP America Prod. Co. v. Laddex, Ltd.*, 458 S.W.3d 683, 685 (Tex.App.—Amarillo 2015), *aff'd*, 513 S.W.3d 476, 487 (Tex. 2017)(*citing City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985)); *see also Pearson v. State*, 315 S.W.2d 935, 938 (Tex. 1958)(the jurisdiction of an appellate court to consider "the merits of a case extends no further than that of the court from which the appeal is taken.").

## CONCLUSION

At the time of the proceedings leading up to the trial court's order purporting to void the transfer of Company stock from Trusts A and C to the Gaddy Trust, Lane and Weston Gaddy claimed ownership of the subject shares because Glenna sold the shares to them from the Gaddy Trust. Accordingly, for Lane and Weston to be bound by any declaration of the trial court adversely affecting their claimed interest, the Declaratory Judgment Act mandates their joinder as parties to the action. Their failure to be joined constitutes fundamental error by the trial court and precludes the trial court from having jurisdiction to enter an order that would have the effect of depriving them of their ownership interests in the shares.

The trial court's order granting Appellee Mark Fenenbock's motion to declare void Appellant Glenna Gaddy's transfer of shares of stock in W. Silver Recycling, Inc. to the Gaddy Trust is vacated. *See BP America Prod. Co.*, 458 S.W.3d at 685; *Brooks*, 141 S.W.3d at 164. We remand to the trial court for further proceedings consistent with this opinion; therefore, we do not reach the merits of Appellant's arguments. *See Pearson*, 315 S.W.2d at 938.

20

June 29, 2022

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.